**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**JOHN DOE,**

                    **Plaintiff,**

        **v.**

**ICAHN SCHOOL OF MEDICINE AT**
**MOUNT SINAI,**

                    **Defendant.**

---

**Civil Action No.:**


**PLAINTIFF'S MEMORANDUM**
**OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR**
**LEAVE TO PROCEED**
**UNDER A PSEUDONYM**

## PRELIMINARY STATEMENT

This is an action for violations of Title IX of the Education Amendments of 1972, breach of contract, and violations of the New York City Human Rights Law.   For the reasons set forth below, Plaintiff respectfully requests that this Court issue an Order granting him leave to proceed in this action under a pseudonym.

## STATEMENT OF FACTS

### John And Jane's Relationship Prior To April 17-18, 2023

John Doe and Jane Roe met when Jane approached John at an orientation event for first-year medical students at the Ichan School of Medicine at Mount Sinai ("ISMMS") in 2019, and the two quickly became very close friends.  Verified Complaint ("VC") at ¶¶ 12, 13.  On January 15, 2023, John and Jane both attended the ISMMS Winter Formal on Roosevelt Island.  VC at ¶ 14.  During the Winter Formal, John and Jane both consumed alcoholic beverages, and John became more intoxicated than Jane.  VC at ¶¶ 15, 16.  After the Winter Formal, John and Jane went to a rooftop bar at a hotel on Roosevelt Island.  VC at ¶ 17.  At the end of the night, John and Jane decided to share an Uber back to Manhattan where they both lived.  VC at ¶ 18.  John and

Jane shared a consensual kiss in the hotel lobby while waiting for the Uber.  VC at ¶ 19.  This was the only time before and after January 15, 2023, that John ever kissed Jane on any part of her body.  VC at ¶¶ 20-24.  John and Jane resolved any lingering issues regarding this lone consensual kiss by the end of January 2023 and continued their friendship as normal through mid-April 2023.  VC at ¶¶ 26-31.

**The Events Of April 17-18, 2023**

John, Jane, and other ISMMS students attended a formal event for graduating ISMMS students in downtown Manhattan on the evening of April 17, 2023 (the "Graduation Formal").  VC at ¶ 35.  After the Graduation Formal, where both John and Jane consumed alcohol, John, Jane, and several of their friends (including John's roommates) returned to John's apartment, where John and Jane both consumed more alcohol.  VC at ¶¶ 36, 39, 40.  Around 3AM on April 18, 2023, Jane asked if she could stay the night at John's apartment for since she felt she was incapable of getting to her own apartment.  VC at ¶ 41.  John agreed and provided Jane with a blanket and pillow so that she could sleep on the couch in the common area of the apartment.  VC at ¶ 43.  At this point in the evening, Jane was sweaty and clammy, verbally indicated she was nauseous to the point where she believed she was going to vomit, and began exhibiting a loss of motor control over her head and neck.  VC at ¶ 44.  While laying on the couch, Jane became incoherent other than repeatedly claiming she was going to vomit.  VC at ¶¶ 45-48.

John became concerned that Jane would vomit in her sleep and fall off the couch, so he moved her into a position to ensure her safety.  VC at ¶ 49.  In order to do so, he knelt behind Jane, created a loop with his arms around Jane's collarbone, and moved her into a safe sleeping posture with her head remaining upright.  VC at ¶ 50.  Jane's head rested on John's head as he supported her.  VC at ¶ 51.  Once again, Jane stated she was going to vomit, and John held her head in

position for a few minutes until she fell asleep.  VC at ¶ 52.  Once Jane fell asleep, John turned the

lights off in the common area and went to bed.  VC at ¶ 54.  When John woke up on the morning

of April 18, 2023, Jane was gone.  VC at ¶ 55.

### Jane Files Title IX Complaint Against John

On April 20, 2023, Jane met with Sandra K. Masur, ISMMS's Title IX Coordinator.  VC

at ¶ 76.  During this meeting, Jane told Masur that in the early morning hours of April 18, 2023,

she was conscious when she felt someone put her hand down the front of her dress, touch her

breasts, and kiss her temple.  VC at ¶ 78.  Jane also told Masur that she passed out after finding

out that S.L. was asleep after the alleged incident.  VC at ¶ 79.  However, in the formal complaint

she emailed to Masur on April 25, 2023, Jane stated that she was sleeping when she felt someone's

hand on her chest underneath her clothing touching her breasts and kissing her on the temple.  VC

at ¶ 80.  Jane falsely identified John as the person who committed these acts.  VC at ¶ 81.  On

April 25, 2023, Masur informed John that ISMMS would be conducting a Title IX investigation

based on Jane's false claims.  VC at ¶ 82.

### The Title IX Investigation

ISMMS hired Dan Schorr and Jade Colon (together the "Title IX Investigators") to

investigate Jane's false claim.  Throughout the investigation process, Jane provided inconsistent

and false statements about what purportedly happened in John's apartment that night.  VC at

¶¶ 90-102.  By contrast, John consistently explained that, in order to prevent Jane from choking

on her vomit or falling off the couch, he knelt on the floor behind her head and supported her

upright by wrapping his arms around her collarbone area with his fists interlocked on top her

collarbone.  VC at ¶¶ 113, 114.  As he was in this position holding Jane's head upright, Jane stated

again that she was going to vomit but was otherwise incoherent.  VC at ¶ 115.  John told the Title

IX Investigators that after he held Jane's head for a few minutes until she fell asleep, he got up, turned off the lights, and went to bed. VC at ¶¶ 116, 117. John made it clear that nothing sexual occurred that night between him and Jane; he did not kiss Jane's temple or touch her breast. VC at ¶¶ 120-123.

### The Title IX Hearing

Following the investigation, a Title IX hearing was held before a three-person panel (the "Hearing Panel") on October 24, 2023. VC at ¶ 195. When questioning Jane, the Hearing Panel repeatedly prefaced questions by noting that Jane did not have to provide an answer if she felt uncomfortable. VC at ¶ 196. The Hearing Panel treated the female witnesses who provided testimony in a markedly different fashion than the male witnesses – when asking C.L. and S.W. for more information, the Hearing Panel asked if they were comfortable providing additional testimony but did not extend this courtesy to any male witnesses. VC at ¶¶ 198-200. During the hearing, John provided ISMMS with DNA evidence undermining Jane's claims. VC at ¶ 201. On October 25, 2023, John provided additional information supporting the fact that Jane told the police a different story than she had told the Title IX Investigators and the non-party witnesses. VC at ¶ 205.

### The Hearing Decision and Appeal

The Hearing Panel issued its decision on November 14, 2023 (the "Hearing Decision") and found John responsible for Sexual Assault: Non-Consensual Sexual Contact. VC at ¶ 207. John appealed the Hearing Decision on November 30, 2023, asserting procedural irregularities and the presence of new evidence, but his appeal was denied in a decision dated January 2, 2023, that was transmitted on January 5, 2023. VP at ¶¶ 233, 234.

## LEGAL STANDARD

Pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, a complaint "must name all the parties." F.R.C.P. 10(a). However, "Courts have nevertheless 'carved out a limited number of exceptions to the general requirement of disclosure [of the names of parties], which permit plaintiffs to proceed anonymously.'" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001)). In determining whether to allow a plaintiff to proceed anonymously, courts in this district apply a test whereby the plaintiff's need for anonymity is balanced against the public interest in disclosure and any prejudice to the defendant. *Sealed Plaintiff*, 537 F.3d at 189. To guide this analysis, the Second Circuit has identified the following non-exhaustive list of factors for consideration:

1. whether the litigation involves highly sensitive and personal matters;

2. whether identification poses a risk of retaliatory physical or mental harm to the party or non-parties;

3. whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

4. whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

5. whether the suit is challenging the actions of the government or that of private parties;

6. whether the defendant is prejudiced by allowing the plaintiff to proceed with his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

7. whether the plaintiff's identity has thus far been kept confidential;

8. whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

9. whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

10. whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id*. at 190. A district court is not required to list each of the foregoing factors or use any particular formulation as long as the court balances the interests at stake in reaching its conclusion. *Id.* at 191 n.4.

**ARGUMENT**

### I.    This Litigation Involves Highly Sensitive And Personal Matters

This case undoubtedly involves highly sensitive and personal matters. Plaintiff has been falsely accused of and improperly found responsible for sexual misconduct. VC at ¶¶ 207, 233, 234. Numerous courts around the country have permitted college student plaintiffs who assert they were falsely accused and/or found responsible of sexual misconduct to proceed anonymously. *See e.g. Doe v. Columbia Univ.,* 831 F.3d 46 (2d Cir. 2016); *Doe v. Univ. of Notre Dame*, 2017 U.S. Dist. LEXIS 223299 (N.D. Ind. May 8, 2017, No. 3:17CV298-PPS/MGG); *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787 (N.D.N.Y. Apr. 12, 2016, No. 5:15-cv-1069 (LEK/DEP)); *Doe v. Washington & Lee Univ.,* 2015 U.S. Dist. LEXIS 102426 (W.D. Va. Aug. 5, 2015, No. 6:14-cv-00052); *Doe v. Univ. of Montana,* 2012 U.S. Dist. LEXIS 88519 (D. Mont. Jun. 26, 2012, No. CV 12-77-M-DLC) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names."). John Doe should be provided similar protection and be permitted to proceed using a pseudonym.

This Court has afforded parties the protection of anonymity in situations much less sensitive than the instant matter. In *Next Phase Distrib., Inc. v. Doe*, 2012 U.S. Dist. LEXIS 27260 (S.D.N.Y. Mar. 1, 2012, 11 Civ. 9706 (KBF)), the Court permitted 138 defendants to proceed under pseudonyms in a copyright infringement matter arising out of the illegal downloading of a pornographic film. *Next Phase Distrib., Inc.*, 2012 U.S. Dist. LEXIS 27260 at *1-*6. In granting the defendants' motion to proceed anonymously, the Court considered the highly sensitive and private nature of being linked to a certain genre of pornographic film, the lack of any showing of prejudice to the plaintiff, and the minimal public interest in disclosing the defendants' names. *Id.* at *4-*5. Defending accusations of sexual misconduct is undoubtedly more sensitive and private than an individual's taste in pornography. Accordingly, John Doe should be afforded the protection provided by a pseudonym.

## II.     Identification Poses A Risk Of Harm To John Doe

Revealing John Doe's identity would result in significant harm, namely, the exact damages he seeks to remedy in this matter – further reputational damages, economic injuries, and the loss of educational and career opportunities. VC at ¶¶ 5, 6, 263, 264; *see Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787 at *9 ("Should Plaintiff prevail in providing that the charges against him were unfounded . . . forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges.") Therefore, forcing Plaintiff to reveal his identity would not further any aspect of the litigation and "instead poses a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787 at *9.

Even if John Doe prevails in this matter, the disclosure of his name would significantly hinder his ability to pursue future career and licensing endeavors, including his medical residency, as any licensing agency or employer would undoubtedly have access to the records related to this matter and discover that Plaintiff was accused of sexual misconduct. It is widely recognized that

the likelihood of acceptance to a top tier residency program or obtaining employment in the medical profession is significantly reduced in light of the high number of applicants and stiff competition, let alone the social stigma associated with being found responsible and sanctioned for sexual misconduct, even if the claim is ultimately proven false.  Based on the foregoing, John Doe should be permitted to proceed anonymously as requiring him to reveal his identity would result in significant harm.  *See Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787 at *9.

The nature of the Internet today is such that any plaintiff's identity is readily accessible via a simple online search.  Thus, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning the allegations underlying the instant matter.  Further, there is no doubt that "cases stemming from investigations of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their accusers."  *See Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787 at *6; *see also Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 180 (D.R.I. 2016) ("This case concerns an issue that has been the subject of increasing attention and controversy, particularly in academia, and which has garnered much recent media and scholarly commentary.")

Here, if John Doe were required to reveal his name, the public's access to his identity would result in reputational, academic, professional, and economic harm -- the very harms which he seeks to remedy in this action.  VC at ¶¶ 5, 6, 263, 264.  This would be true even if John Doe were to succeed on his claims against Defendant.  As noted by a court in this Circuit, "protecting the anonymity of . . . those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected."  *Doe v. Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787 at *6-*7.

Moreover, the State of New York has determined that individuals such as John are particularly vulnerable to the harms of disclosure in cases such as this one.  Education Law Article 129-B requires colleges and universities in the State of New York to implement policies and procedures related to sexual assault, dating violence, domestic violence, and stalking.  *See* N.Y. Educ. Law, Title VII, Art. 129-B, *et seq.*  Education Law Article 129-B, § 6448, states "[p]ursuant to subdivision (i) of rule three thousand sixteen of the civil practice law and rules, in any proceeding brought against an institution which seeks to vacate or modify a finding that a student was responsible for violating an institution's rules regarding a violation covered by this article, the name and identifying biographical information of any student shall be presumptively confidential and shall not be included in the pleadings and other papers from such proceeding absent a waiver or cause shown as determined by the court."  N.Y. Educ. Law § 6448.  While this is not a lawsuit pursuant to Section 6448 of Education Law Article 129-B, the guiding principal behind Section 6448 of the Education Law indicates that Plaintiff is entitled to confidentiality and should be permitted to utilize a John Doe designation in all pleadings and other papers associated with this matter.

For all of the reasons set forth above, identification poses a risk of serious harm to John Doe.  As a result, he should be provided the anonymity of a pseudonym.

### III.   Defendant Will Not Be Prejudiced If Plaintiff Is Permitted To Use A Pseudonym

John Doe should be permitted to proceed anonymously, as Defendant will not be prejudiced in any way. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers."  *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, because Defendant is already aware of John Doe's true identity, they will not be

prejudiced if he is afforded the protection of a pseudonym. *See Doe v. Bedford Cent. Sch. Dist.*, 2019 U.S. Dist. LEXIS 20625 at *3 (S.D.N.Y. Feb. 8, 2019, Civ. Action No. 18 CV 11797 (VB)). There is no doubt that Defendant will have an unobstructed opportunity to conduct discovery, present their defenses, and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. Accordingly, John Doe must be permitted to proceed anonymously in this action as revealing his name will cause significant prejudice to him, while proceeding anonymously will not hinder Defendant in any way.

### IV.    Plaintiff's Identity Has Thus Far Been Kept Confidential

This Court has permitted plaintiffs to proceed using a pseudonym when "there is no indication that [their] identity is known to the public or the media." *Doe v. City of New York*, 2016 U.S. Dist. LEXIS 16344 at *11 (S.D.N.Y. Feb. 4, 2016, Civ. Action No. 15-CV-117(AJN)); *see also Doe v. Bedford Cent. Sch. Dist.*, 2019 U.S. Dist. LEXIS 20625 at *3 (granting anonymity where plaintiffs had "not discussed their claims publicly or in the media."). John's true identity has not been made public, nor has he discussed his claims in public or in the media. Thus, he should be afforded the protection of a pseudonym.

### V.    There Is Minimal Public Interest in Plaintiff's Identity

There is simply nothing about John Doe that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh his right to privacy. As in *Next Phase Distrib., Inc.*, there is minimal public interest in disclosing John Doe's name when weighed against his interest in proceeding anonymously. *See Next Phase Distrib., Inc.*, 2012 U.S. Dist. LEXIS 27260 at *4-*5. John Doe is not a public figure or otherwise noteworthy individual, and there is no basis for putting his sensitive and private personal matters on public display. Further, allowing John Doe to use a pseudonym will not be detrimental to the general

public's understanding of this matter (to the extent that there is any public interest in this matter). The public's knowledge will only be restricted as to his identity, but not to the substantive allegations in this matter. Moreover, forcing John Doe to reveal his identity could have a chilling effect on other similarly situated future plaintiffs. The factors at issue in this case, therefore, favor anonymity for John Doe.

### VI.    There Are No Alternative Mechanisms For Protecting John's Confidentiality

Plaintiff's confidentiality can only be preserved though the use of a pseudonym. Thus, pursuant to the tenth *Sealed Plaintiff* factor, he is entitled to anonymity.

### VII.    The Remaining *Sealed Plaintiff* Factors Are Irrelevant Or Neutral

Plaintiff is not challenging government action, making that *Sealed Plaintiff* factor inapplicable to the instant matter. While Plaintiff does not assert that he will suffer retaliatory physical or mental harm (the second *Sealed Plaintiff* factor), he has identified significant additional other harms that he will suffer should he be forced to litigate using his real name, and the State of New York has identified litigants such as Plaintiff as individuals deserving of the protections afforded by a pseudonym.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order granting Plaintiff leave to proceed under a pseudonym and granting him such additional relief as the Court may deem just and proper.

Dated: New York, New York
      January 16, 2024

**WARSHAW BURSTEIN, LLP**
*Attorneys for Plaintiff*

By: _____
        Kimberly C. Lau
        James E. Figliozzi
        Branden P. Lynn
      575 Lexington Avenue
      New York, New York 10022
      (212) 984-7700
      klau@wbny.com
      jfigliozzi@wbny.com