UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

               Plaintiff,

– against –

ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI,

               Defendant.

**OPINION & ORDER**

24-cv-344 (ER)

RAMOS, D.J.:

    John Doe, a medical student at the Icahn School of Medicine at Mount Sinai ("Mount Sinai"), filed this action against Mount Sinai on January 18, 2024. Doc. 1. Mount Sinai suspended Doe for 20 months, and imposed other sanctions, after finding him responsible for sexual misconduct directed at a fellow student, Jane Roe. Doe alleges that Mount Sinai's adjudication of Roe's complaint against him discriminated against him on the basis of gender, in violation of Title IX and the New York City Human Rights Law. Doc. 1. Doe also asserts a breach of contract claim. *Id*. Before the Court is Doe's motion for a temporary restraining order and preliminary injunction to enjoin his suspension and to immediately reinstate him as a student, among other requested forms of relief. Doc. 5. For the reasons set forth below, the motion is DENIED.

**I.    BACKGROUND**

    John Doe and Jane Roe both attended and were acquaintances at Mount Sinai, a private medical school in New York. On April 17, 2023, Doe and Roe both attended the school's Graduation Formal. Doc. 6 at 3. Both were drinking alcohol. *Id*. Later that evening, Doe, Roe, and several of their friends went to Doe's on-campus apartment for an after-party. *Id*. Later that night, Roe asked to stay over for the night due to her intoxication. *Id*. Doe agreed and provided her with a blanket and pillow so she could sleep on the couch in the common area of the apartment. *Id*. After Roe was laying on the

couch, she alleges that she was woken up by someone kissing her temple and groping her breasts. Doc. 18 at 7. Roe alleges that she recognized the person to be Doe because of his facial hair, but out of fear, pretended to be asleep. Doc. 7-7 at 8; Doc. 19-1 at 7. Doe denies that he ever groped Roe; rather, he asserts that he was concerned that given her level of intoxication, she would aspirate, potentially causing harm to herself. Doc. 6 at 3. So, Doe asserts that he merely maneuvered Roe's upper body so that she was propped up on the sofa. *Id*.

Roe met with Mount Sinai's Title IX Coordinator, Dr. Sandra Masur, on April 20, 2023, about her complaint concerning sexual assault by Doe and completed a Title IX intake form. Doc. 7-2. Roe filed a formal Title IX complaint on April 25, 2023. Doc. 18 at 8.

After Roe filed her complaint, Mount Sinai retained Dan Schorr, LLC, an outside Title IX investigation firm, to conduct an inquiry regarding Roe's allegations. *Id*. The firm issued a Report of Investigation on August 9, 2023, after interviewing Doe, Roe, and seven other individuals. Doc. 7-31 at 3. The Report of Investigation, a draft of which had been provided to both Doe and Roe, included an appendix of all proposed edits submitted by Doe and Roe. Doc. 18 at 8.

A Title IX hearing was held before a three-person panel on October 24, 2023, at which both Doe and Roe were accompanied by counsel. *Id*; Doc. 7-31 at 24. Both Doe and Roe provided opening and closing statements. Doc. 18 at 8. Doe declined to answer questions from the panel, while Roe answered questions. *Id*. During the proceeding, lawyers for both parties cross-examined witnesses who testified at the hearing. *Id*.

On November 14, 2023, the hearing panel issued a 23-page decision finding Doe responsible for sexual misconduct. Doc. 7-31. In the written decision, the hearing panel discussed the reasons it found Roe's version of events more credible than Doe's and also addressed certain inconsistencies in Roe's statements, including whether Roe avoided being alone with Doe following the January 2023 Winter Formal, where on her body Roe

stated she was kissed during the assault, and whether Roe was awake or asleep prior to the incident. *Id.* at 17–19. The hearing panel addressed the evidence presented by Doe, including materials presented before, during, and after the hearing. Doc. 18 at 9. The hearing panel issued Doe: (1) a 20-month suspension, (2) a mandatory evaluation for alcohol use disorder, (3) a notation on Doe's transcript and Medical Student Performance Evaluation, (4) a no contact-order with Roe, and (5) a requirement that Doe vacate student housing. *Id.*

Both Roe and Doe appealed the panel's decision on November 29 and November 30, 2023, respectively. Doc 7-33 at 3–4. Roe challenged the leniency of the discipline and asked that Doe be expelled. *Id.* at 3. Doe challenged the finding of responsibility. *Id*. at 4. The appeals panel reviewed the parties' arguments and the evidentiary record, and on January 2, 2024,[1] issued a decision which affirmed the hearing panel. Doc. 7-33. Pursuant to Mount Sinai's Sexual Misconduct Policy, this appeals decision was reviewed by a designee appointed by the Dean, who also upheld the hearing panel's decision. Doc 7-35. The appeals panel's decision was transmitted to Doe on January 5, 2024. Doc. 6 at 11.

Doe filed his complaint, the instant motion, and a motion for leave to proceed under a pseudonym on January 17, 2024. Docs. 1, 3, 5. That same day, the Court granted Doe's motion for leave to proceed pseudonymously pending further briefing. Doc. 15. On January 18, 2024, Mount Sinai submitted its opposition to Doe's motion for a temporary restraining order and preliminary injunction and the Court also held a preliminary injunction hearing. Doc. 18; Jan. 18, 2024 Minute Entry. At the hearing, Mount Sinai's counsel indicated the school did not oppose Doe's motion to proceed pseudonymously, which the Court then granted. Jan. 18, 2024 Minute Entry.

Doe's requested emergency injunctive relief includes:

---

[1] The Court notes the appeals decision is mistakenly dated January 2, 2023. Doc 7-33.

3

- "[e]njoining [Mount Sinai] during the pendency of this action from imposing a suspension upon [Doe], or excluding him from participating in his coursework"
- "[d]irecting [Mount Sinai] to allow [Doe] to attend his Introduction to Internship classes beginning January 22, 2024"
- "[d]irecting [Mount Sinai] to timely confer the [Doe's] degree upon the successful completion of the requirements therefor [*sic*]"
- [e]njoining [Mount Sinai] from creating or transmitting an addendum to the plaintiff's medical school performance evaluation referencing the Title IX allegations, investigation, or outcome"

Doc. 5 at 1–2. On January 22, 2024, the Court received a letter from Doe explaining that he has been unable to start his Introduction to Internship course and that he received an email from the chair of the neurosurgery department at Mount Sinai giving him an "unofficial guarantee" of a neurosurgery residency position, presumably at Mount Sinai. Doc. 21.

## II. LEGAL STANDARD

The standard for granting a temporary restraining order is the same as for granting a preliminary injunction. *See Echo Design Grp., Inc. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003). A preliminary injunction is an "extraordinary" and "drastic" remedy. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal citations omitted).

A party seeking a preliminary injunction must demonstrate that it will suffer irreparable harm absent injunctive relief and either "(1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master*

4

*Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

Preliminary injunctions can be prohibitory or mandatory. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *North American Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018) (internal citations omitted). When a party seeks a mandatory injunction, it is required to meet a heightened legal standard by showing "a clear or substantial likelihood of success on the merits." *Id.* at 37 (quotation marks and internal citations omitted).

### III.   DISCUSSION

####   1.   *Doe Does Not Demonstrate a Likelihood of Success on the Merits*
#####   a.   *Doe is Seeking a Prohibitory Injunction*

As a preliminary matter, the parties dispute whether Doe seeks a prohibitory or mandatory inunction. Doc. 6 at 14. The Second Circuit has held that in the temporary restraining order or preliminary injunction context, the status quo is "the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (quotation marks and internal citations omitted). The Second Circuit has also explained that the status quo "is really a 'status quo ante,'" which is intended to preclude "[parties] from seeking shelter under a current 'status quo' precipitated by their wrong-doing." *North American Soccer League*, 883 F.3d at 37 n.5.

Here, the last "actual, peaceable, uncontested" status between the parties was Doe's status as an active, enrolled student at Mount Sinai. *See Mastrio v. Sebelius*, 768 F.3d at 120. In other words, the status quo ante was the situation prior to the imposition of sanctions on Doe, including his suspension. *See Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (finding that in the context of a temporary restraining order and preliminary injunction, "preserv[ing] the status quo" meant permitting suspended

5

students to continue attending school). Accordingly, the Court finds that Doe seeks a prohibitory injunction.[2] Doe is not subject to the heightened standard for mandatory injunctions, and therefore only needs to show a "greater than fifty percent probability of success." *Citigroup Glob. Markets, Inc.*, 598 F.3d at 34–35.

### b. Doe is Unlikely to Succeed on the Claim that the Title IX Outcome was Wrongful

Doe alleges violations of Title IX under an erroneous outcome theory. Doc. 6 at 15–21. In pleading an erroneous outcome under Title IX, a party asserts that they were wrongfully found responsible for their alleged offense. To succeed on this claim, Doe must demonstrate "articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding" and that "gender bias was a motivating factor behind the erroneous finding." *Doe v. Colgate Univ.*, 760 Fed. Appx. 22 (2d Cir. 2019) (quotation marks and internal citations omitted).

#### i. There is No Articulable Doubt As to Outcome of the Doe's Title IX Proceeding

At the preliminary injunction hearing, the parties agreed that the Court should not interfere with Mount Sinai's substantive credibility determinations. *See also Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 477 (S.D.N.Y. 2015) (finding "it is beyond the Court's purview to second guess" a university's credibility determinations and overall evaluation of the evidence in connection to a Title IX hearing). Accordingly, the Court will only consider if Mount Sinai's credibility determinations were unsupported by the evidence.

Doe argues that panel improperly ignored evidence of certain inconsistencies in Roe's testimony. Doc. 6 at 15–16. Mount Sinai argues the hearing panel considered this evidence, but ultimately credited Roe's explanation of events. Doc. 18 at 13-14. The

---

[2] This result also comports with how courts in this Circuit have addressed similar cases. *See, e.g.*, *Doe v. Siena Coll.*, No. 22-cv-1115(BKS), 2023 WL 197461, at *12 (N.D.N.Y. Jan. 17, 2023) (finding student seeking a preliminary injunction to reinstate him as a student after his suspension for sexual misconduct was seeking prohibitory, not mandatory, injunction); *Doe v. Vassar Coll.*, No. 19-cv-9601 (NSR), 2019 WL 6222918, at *4 (S.D.N.Y. Nov. 21, 2019) (same).

Court agrees with Mount Sinai. In this case, the hearing panel discussed the reasons it found Roe's version of events to more credible in its detailed written decision. *See* Doc. 7-31. The hearing panel expressly acknowledged the alleged inconsistencies[3] in Roe's testimony, and further explained how the panel weighed these inconsistencies in its credibility determinations. *See id*. at 17–20.

While Doe claims that Mount Sinai failed to apply the preponderance of the evidence standard generally used in Title IX hearings and improperly shifted the burden of proof onto him, Doc. 6 at 22, these allegations are contradicted by the factual record. The hearing panel specifically told Doe that he was presumed not responsible and did not have the burden of proof. Doc. 7-31 at 6.

Accordingly, the Court finds that Doe's arguments do not demonstrate articulable doubt as to the outcome of the proceeding.

   ii. *There is No Evidence of Gender Bias*

Doe next asserts that his Title IX proceeding was affected by anti-male bias. In a Title IX action, examples of gender bias can be shown by "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yu*, 97 F. Supp. 3d at 475 (quotation marks and internal citations omitted). As an initial matter, Mount Sinai's finding that Roe's version of events was more credible than Doe's, without more, does not demonstrate gender bias. *See Colgate Univ.*, 760 Fed. App'x at 33.

Here, the record does not show any evidence of gender bias. Doe does not rely on statements from officials on the hearing panel, or other Mount Sinai officials, that display anti-male discriminatory intent, nor does he provide any patterns in Mount Sinai's decision making to that effect. *Yu*, 97 F. Supp. 3d at 475. Instead, Doe first alleges that

---

[3] Specifically, the panel noted the discrepancy that Roe stated she tried to avoid being alone with Doe after the Winter Formal in January 2023 and various texts that suggested otherwise; a discrepancy in Roe's account of where she was kissed (on the temple or on the neck) during the assault; and whether Roe was awake or asleep prior to the incident. Doc. 7-31 at 17–19.

7

Mount Sinai's employee training module on sexual harassment involves examples of only male perpetrators and overwhelmingly female victims. Doc. 6 at 19; *see also* Doc. 7-34. However, as Mount Sinai points out, the examples Doe relies on are not from the school's Title IX training. The school's Title IX training is provided by an outside vendor and includes fact patterns with different genders as both perpetrators and victims. *See* Doc. 18 at 16; Doc. 19-3.

Second, Doe alleges Masur, the Mount Sinai Title IX Coordinator, is biased against men. Doe specifically references Masur's social media posts and her "cho[ice] to initiate a Title IX Complaint." Doc. 6 at 19–20. The two social media posts that Doe points to, one from April 2016 and the other from July 2018, concern gender issues or sexism in the workplace matters which are unrelated to Title IX. Docs. 7-5, -6. Masur's role in this case was simply to determine if Roe's complaint fell under the definition of sexual misconduct under Title IX; in other words, she did not "choose" to initiate any proceedings, nor did she serve on any of the panels considering this case. Doc. 18 at 17.

Third, Doe argues that Mount Sinai's sexual misconduct policy references "additional trauma" implying that complainants should be believed. Doc. 6 at 17. But this language was taken directly from a United States government website concerning Title IX. Doc. 18 at 17–18. Fourth, Doe asserts that during the Title IX hearing, Roe and other female witnesses were asked if they felt comfortable sharing sensitive information, a question which was not asked to male witnesses. Doc. 6 at 20. However, Doe does not show how the panel's alleged sensitivity in asking questions reveals any sort of gender bias.

Finally, Doe argues that Mount Sinai's hearing process is affected by public pressure following a 2019 case accusing the school of, among other things, gender discrimination against women in certain hiring decisions. Doc. 6 at 21, citing *Atkinson v. Singh*, No. 19-cv-3779 (VSB), 2022 WL 137634, * 1–2 (S.D.N.Y. Jan. 14, 2022). But this is kind of indirect association is insufficient as a matter of law, especially when Doe

8

makes no connection between the members of the hearing or appeals panel and the 2019 lawsuit. *See Yu*, 97 F. Supp. 3d at 475; *see also Doe v. Colgate Univ.*, No. 15-cv-1069 (LEK), 2017 WL 4990629, at *12 (N.D.N.Y. Oct. 31, 2017) (allegation that college saw "a huge amount of student activism centered around survivor support" insufficient), *aff'd*, 760 F. App'x 22 (2d Cir. 2019).

The Court therefore finds that Doe fails to show a likelihood of success in establishing gender bias.

### c. Doe is Unlikely to Succeed on his New York City Human Rights Law and Breach of Contract Claims

Doe's New York City Human Rights Law claim requires showing unlawful discrimination. *Doe v. New York Univ.*, No. 20-cv-01343 (GHW), 2021 WL 1226384 at *24 (S.D.N.Y. Mar. 31, 2021). For the reasons discussed above, Doe fails to make this showing. Because Doe cannot establish an unfair outcome, his breach of contract claim fails as well. *See Yu*, 97 F. Supp. 3d at 481 ("Because the Court has already found that Vassar did not violate any of its own procedures, Yu's contract claims based on the same purported violations fail for the same reasons.").

In sum, Doe fails to show that his claims are likely to succeed on the merits or, alternatively, raise serious questions going to the merits. Because Doe does not meet these criteria, the Court need not engage in analysis about the balance of hardships.

### 2. Doe Does Not Establish Irreparable Harm

Doe argues that absent injunctive relief, he will lose his progress towards a project required for graduation and will be unable to match into residency during this year's application cycle. Doc. 6 at 22–24. Mount Sinai retorts that Doe can complete his project upon his return to Mount Sinai following his suspension, and that a two-year delay in graduation can be remedied by monetary relief. Doc. 18 at 10–13.

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559

9

F.3d 110, 118 (2d Cir. 2009) (internal citation omitted).  The Second Circuit defines irreparable harm as "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020) (internal citation omitted).

The Second Circuit has found that the harms from a delay in a student's graduation resulting in delay to their future career are quantifiable and can be remedied by monetary damages, should the student prevail on the merits of their case. *See Phillips v. Marsh*, 687 F.2d 620 (2d Cir. 1982).  In *Phillips*, a West Point cadet brought a preliminary injunction seeking her reinstatement at the Academy.  The Court found that she failed to show irreparable harm, since "any damages to her from deferring her career . . . would be compensable by monetary damages." *Id*.  At least one court in this District has recently applied Phillips' logic in a case involving the suspension of a student for sexual misconduct. *See Doe v. Vassar Coll.*, No. 19-cv-9601 (NSR), 2019 WL 6222918, at *6 (S.D.N.Y. Nov. 21, 2019) ("As the Second Circuit has held, the harms a plaintiff might suffer from a delay in graduation are quantifiable and can be adequately remedied by money damages, should the plaintiff prevail on the merits of his case."); *see also Yu v. Vassar*, No. 13-cv-4373 (PAC), Feb. 25. 2014 Order (denying preliminary injunction in case involving a male student's suspension due to sexual misconduct because the student "failed to adequately demonstrate that he would suffer irreparable injury or the immediacy of his need for relief.").

Here, while Doe's suspension will delay becoming a doctor by two years, this harm can be remedied by monetary relief and is therefore not irreparable. *Phillips*, 687 F.2d 620, *Doe v. Vassar Coll.*, 2019 WL 6222918 at *6.  Doe does not cite any controlling precedent that suggests otherwise.[4]  Doe's assertion that he will lose all progress towards

---

[4] Indeed, Doe's argument that a delay in his medical training will have a stigmatizing effect, which he argues constitutes irreparable harm, has no basis in the legal precedent of this District.  Moreover, Mount Sinai affirms that there are "many reasons why students extend their graduation," including pursuing

10

a presentation required for graduation likewise do not establish irreparable harm. As the Senior Associate Dean for Mount Sinai affirms, Doe will not lose his progress, but rather will be able to present his required research and finish his required coursework upon his return. Doc. 20. Doe will also be able to reapply to the 2025 residency match cycle. *Id*. In short, Doe will still be able to complete his requirements and graduate with a Mount Sinai diploma. Thus, the Court finds that Doe has not demonstrated irreparable harm.

IV. CONCLUSION

For the foregoing reasons, Doe's motion for a temporary restraining order and preliminary injunction is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 5.

It is SO ORDERED.

Dated:   January 23, 2024
         New York, New York

EDGARDO RAMOS, U.S.D.J.

---

research experiences, consulting opportunities, or even family obligations or health conditions. Doc. 20 at 2.