

Warshaw Burstein, LLP                                          Kimberly C. Lau, Esq.
575 Lexington Avenue                                          Partner
New York, NY  10022                                          klau@wbny.com
(212) 984-7700

April 23, 2024

**VIA ECF**
Hon. Edgardo Ramos
United States District Court, Southern District of New York
40 Foley Square
New York, New York 10007

**Re:  Doe v. Icahn School of Medicine at Mount Sinai; Docket No. 1:24-cv-00344-ER**

Dear Judge Ramos:

We represent Plaintiff John Doe and write in opposition to Defendant Icahn School of Medicine at Mount Sinai's ("ISMMS") request for a pre-motion conference.

**There Is No Basis For Striking The Allegations Related to Rebecca Berkebile[1]**

On January 16, 2024, Rebecca Berkebile stated that she worked closely with ISMMS to ensure that all relevant policies were followed during Plaintiff's Title IX matter because Jane Roe's attorney Laura Dunn was involved from the beginning of the process.  This constituted a clear waiver of the attorney-client privilege, as Ms. Berkebile was authorized to (and indeed did) disclose ISMMS's legal strategy regarding the investigation and adjudication of the Title IX allegations against Plaintiff.  These statements made in the context of a pre-suit settlement discussion were not included in Plaintiff's Verified Complaint filed on January 16, 2024.  However, during the hearing before this Court on January 18, 2024, Ms. Berkebile acknowledged Dunn's presence in the Courtroom and stated that the threat of litigation by Jane precluded settlement discussions.  Thus, in addition to waiving the attorney-client privilege, ISMMS also waived any protections associated with FRE 408.  As a result, Plaintiff was able to include the allegations regarding Ms. Berkebile's involvement in the underlying Title IX process as part of the Amended Complaint ("AC") filed on April 9, 2024.  ISMMS's claim that Plaintiff is engaging in unethical behavior is belied by Ms. Berkebile's failure to safeguard her client's rights and interests.[2]

---

[1] The below arguments also apply to the allegations concerning Erica Liu.
[2] Unlike the former employee in *Neogenix Oncology, Inc. v. Gordon*, No. 14-CV-4427 JFB AKT, 2015 WL 5774171 (E.D.N.Y. Sept. 29, 2015), whose answer was partially struck for revealing privileged information and documents improperly retained after his employment ended, Ms. Berkebile was a current employee of ISMMS authorized by ISMMS to disclose privileged material when she shared ISMMS's legal strategy on January 16, 2024.

Page 2 of 4

Any claim that Plaintiff engaged in harassment and gamesmanship by waiting to reference Ms. Berkebile's involvement until the filing of the AC is destroyed by the timeline noted above.[3] Further, the allegations regarding Ms. Berkebile's involvement in the underlying Title IX matter are material to Plaintiff's Title IX claim, as they establish that ISMMS was subject to pressure from Dunn and the threat of litigation by Jane that led ISMMS to engage in gender-biased behavior. AC ¶¶ 401-26, 496-504, 523-25, 536-38. The AC also asserts that Berkebile consumed anti-male training materials that caused her to steer the outcome of the Title IX investigation and adjudication in a manner that harmed Plaintiff. AC ¶¶ 408-26, 614-20. ISMMS misleadingly cites the Title IX Report of Investigation ("ROI") to incorrectly assert that Dunn did not represent Jane until June 2023. ECF 32 at 2. The ROI does not state that Dunn was retained by Jane in June 2023; rather, it states that Dunn made a formal appearance as Jane's advisor in the Title IX process on June 30, 2023. ECF 7-22 at 5. The ROI does not dispute the allegation that Jane retained Dunn as her attorney at the outset of the Title IX process and that ISMMS engaged in a flawed anti-male process as a result of Dunn's presence. Even if Dunn did not represent Jane until June 2023, the allegations regarding Berkebile's involvement would still be relevant, as the investigation was ongoing at that time, the adjudication process had not started, and Berkebile was involved in both processes.

ISMMS's conclusory blanket assertion of attorney-client privilege during the adjudication phase cannot form the basis of striking well-pleaded allegations, especially when the privilege has been waived. Further, the fact that Ms. Berkebile is an attorney does not mean that any communication involving her is automatically privileged. *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 37 (E.D.N.Y. 2013). Moreover, the Title IX Policy provision relied on by ISMMS to impermissibly assert a blanket privilege uses permissive language regarding ISMMS General Counsel's involvement during the investigation stage, indicating that legal services are not necessarily being provided her at that time.[4] Any motion to strike would be futile because ISMMS affirmatively waived the attorney-client privilege and the protections afforded by FRE 408.

## There Is No Basis For Dismissing The Amended Complaint[5]

As explained in Plaintiff's response to ISMMS's first pre-motion conference letter, ISMMS shows a complete misunderstanding of the standard that this Court must adhere to when deciding a motion to dismiss. At this stage in the litigation, the findings made during the TRO/PI application are irrelevant. Rather, the allegations in the AC must be accepted as true and any motion to dismiss must be denied as long as the allegations state a claim that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Doe v. New York Univ.*, No. 1:20-CV-01343-GHW, 2021 WL 1226384 at *8 (S.D.N.Y. Mar. 31, 2021).

---

[3] ISMMS's cry of poverty is also laughable. ECF 32 at 2. ISMMS has hired the global law firm Proskauer Rose LLP to represent it in the two cases referenced in the AC. In 2016, Proskauer's partners billed at rates between $925 and $1,475 per hour. Sara Randazzo and Jacqueline Palank, Legal Fees Cross New Mark: $1,500 an Hour, THE WALL STREET JOURNAL, Feb. 9, 2016 (available at https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708). These rates have undoubtedly increased over the last eight years.

[4] *Stanton v. Encompass Indem. Co.*, No. 12-CV-00801-PAB-KLM, 2012 WL 4466555 (D. Colo. Sept. 27, 2012), is irrelevant to the instant matter, as the allegations that were struck had no bearing on the claims at issue, which was the reason why the court was unwilling to disqualify defense counsel. *Stanton*, 2012 WL 4466555 at *4.

[5] ISMMS's contention that the AC violates FRCP 8 cannot be taken seriously, as ISMMS has repeatedly asserted that the allegations put forth by Plaintiff are insufficiently detailed.

**Page 3 of 4**

There is a low burden for pleading an erroneous outcome cause of action in the Second Circuit, particularly in "he said-she said" cases like this one. *Feibleman v. Trs. of Columbia Univ.*, 19-CV-4327 (VEC), 2020 U.S. Dist. LEXIS 31499 at *30, *43 n.22 (S.D.N.Y. Feb 24, 2020); *Doe v. New York Univ.*, 2021 WL 1226384 at *16. As detailed in Plaintiff's response to ISMMS's first pre-motion conference letter, there were numerous procedural flaws in ISMMS's Title IX process sufficient to cast articulable doubt on the outcome of the process. AC ¶¶ 152-247. Because the allegations in the AC clearly meet "the minimal plausibility threshold, dismissal of [Plaintiff's] erroneous outcome claim at this stage would amount to an improper credibility determination." *Feibleman*, 2020 U.S. Dist. LEXIS 31499 at *43.

The AC also meets the low threshold for pleading gender bias in the Second Circuit. *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016); *Feibleman*, 2020 U.S. Dist. LEXIS 31499 at *43 n.22. The AC details the anti-male bias exhibited by the Title IX Investigators before, during, and after the underlying Title IX investigation. AC ¶¶ 248-307. The AC highlights the significant years-long internal and external pressures that ISMMS faced as a result of two lawsuits alleging anti-female discrimination at ISMMS. AC ¶¶ 308-363. ISMMS's purported success in defending these suits is immaterial to the immense blowback that resulted from the allegations of misogyny contained therein. ISMMS employees were also trained using materials that assumed that men are perpetrators of sexual assault and women are victims. AC ¶¶ 364-69.[6] ISMMS willfully ignores important contextual allegations in the AC when it makes a misguided attempt to defend the outdated and illegal language in its own Title IX Policy. ECF 32 at 3; AC ¶¶ 427-67, 589-605. The AC exposes the Title IX Coordinator's history of anti-male bias. AC ¶¶ 370-400. Ms. Berkebile's untoward involvement in the Title IX process is also noted. AC ¶¶ 401-26, 496-504, 523-25, 536-38, 614-20. The anti-male bias of the Hearing Panel is also discussed in great detail, including the failure to consider or properly scrutinize evidence that negatively impacted Jane's credibility and the decision to treat female witnesses with more reverence than male witnesses. AC ¶¶ 427-504. The AC further notes ISMMS's anti-male actions taken in response to Dunn's email to Ms. Berkebile and the head of the Hearing Panel where Dunn threatened to sue ISMMS. AC ¶¶ 419-23. Anti-male bias by the Appeal Panel and the Dean's Designee is also plausibly alleged. AC ¶¶ 505-38. Viewing the allegations in the AC together as a whole, there is "nothing implausible or unreasonable about [Plaintiff's] suggested inference that" ISMMS subsequently "adopted a biased stance in favor of the accusing female and against the defending male . . . in order to avoid further fanning the criticisms" regarding ISMMS's history of misogynistic behavior. *Doe v. Columbia Univ.*, 831 F.3d at 58. The combination of procedural irregularities noted above and instances of external pressure and biased training materials detailed in the AC are sufficient to state a plausible allegation of bias. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019); *Feibleman*, 2020 U.S. Dist. LEXIS 31499 at *25-*27; *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 138 (N.D.N.Y. 2018). Any motion to dismiss would therefore be futile.[7]

Your Honor's attention to this matter is greatly appreciated.

---

[6] ISMMS improperly relies on a non-controlling, unreported, non-precedential summary judgment case in a futile attempt to combat these allegations, which must be accepted as true at this stage in the litigation. ECF 32 at 3.

[7] A plain reading of the AC shows that John has adequately pleaded causes of action for violations of the NYCHRL (AC ¶¶ 622-31) and breach of contract (AC ¶¶ 632-45).

Respectfully submitted,

By: _____

**Kimberly C. Lau, Esq.**
**Warshaw Burstein, LLP**
**575 Lexington Avenue**
**New York, New York 10022**
**(212) 984-7700**
**klau@wbny.com**